[Cite as *Littler v. Janis*, 2024-Ohio-1145.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Steven Littler, | : | |
| Plaintiff-Appellant, | : | No. 23AP-360 |
| | | (C.P.C. No. 13CV-12574) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Leonard Janis, DPM et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 26, 2024

**On brief:** *Donahey, Defossez & Evans*, and *Mark E. Defossez*, for appellant. **Argued:** *Mark E. Defossez.*

**On brief:** *Reminger Co., LPA, David H. Krause*, and *Kenton H. Steele*, for appellee Leonard Janis, DPM. **Argued:** *Kenton H. Steele.*

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1}  Plaintiff-appellant, Steven Littler, appeals from a judgment of the Franklin County Court of Common Pleas granting a motion to dismiss for failure to prosecute under Civ.R. 41(B)(1) filed by defendants-appellees Leonard Janis, DPM (individually "Dr. Janis"), Total Foot & Ankle of Ohio (individually "Total Foot & Ankle"), and Marysville Ohio Surgical Center, LLC (individually "Marysville Ohio Surgical").

**I. Facts and Procedural History**

{¶ 2}  In November 2013, appellant filed a complaint for negligence against appellees.  According to the complaint, appellant injured his right ankle in February 2012, and underwent surgery performed by Dr. Janis at Marysville Ohio Surgical on May 20, 2012; following the surgery, appellant continued to suffer pain, and he underwent revision

surgery on April 29, 2013. The trial court subsequently consolidated appellant's case with other similar cases filed against Dr. Janis.

{¶ 3} On October 10, 2022, appellees filed a motion to dismiss for failure to prosecute pursuant to Civ.R. 41(B)(1). In the accompanying memorandum in support, appellees argued appellant's action was "the last of a multitude of lawsuits" filed "more than 10 years ago" against Dr. Janis and Total Foot & Ankle; further, that "[t]wo of the cases went to trial resulting in verdicts in favor of [Dr. Janis] and Total Foot & Ankle," and "[m]ost of the other cases have been resolved through settlements." (Oct. 10, 2022 Mot. to Dismiss at 2.)

{¶ 4} Appellees represented that "[i]n the summer of 2021," counsel for appellees learned appellant "had multiple prior criminal warrants from the State of Ohio as well as pending felony warrants for his arrest in the states of Illinois and Missouri." (Oct. 10, 2022 Mot. to Dismiss at 3.) According to appellees, counsel for both sides "discussed the case in March, 2022 to determine how to proceed" and, "[a]t that time, counsel for [appellant] was still attempting to communicate with his client." (Oct. 10, 2022 Mot. to Dismiss at 3.) It was further represented that appellant had "since been arrested and taken into custody and is currently being processed through the criminal justice system in those states." (Oct. 10, 2022 Mot. to Dismiss at 4.) Appellees argued appellant's case had been pending "more than nine years" and that, in order to move forward with the "only remaining case," appellant "will need to [be] present for deposition testimony." (Oct. 10, 2022 Mot. to Dismiss at 4.)

{¶ 5} On October 12, 2022, appellant filed a memorandum contra appellees' motion to dismiss, asserting he had "not been dilatory in discovery," but that his case "has been complicated by the fact [he] has been arrested on at least one occasion and resides outside of Ohio." (Oct. 12, 2022 Memo Contra at 3, 5.)

{¶ 6} On October 13, 2022, appellees filed a reply in support of their motion to dismiss, again asserting appellant's lawsuit was the final action pending against Dr. Janis, and that appellees "have requested the deposition of [appellant] but have not received dates" for his deposition. (Oct. 13, 2022 Reply at 3.)

{¶ 7} On November 10, 2022, appellees filed a renewed motion to dismiss for failure to prosecute, arguing the case had been stalled due to appellant's counsel being

unable to produce appellant, and asserting "[i]t appears * * * the difficulties in communicating with [appellant] are attributable to a variety of criminal matters that are pending against him." (Nov. 10, 2022 Renewal of Mot. to Dismiss at 1.)

{¶ 8} On January 4, 2023, appellant filed a motion to stay pending resolution of his criminal case. On January 9, 2023, appellees filed a memorandum in opposition to appellant's motion to stay. In the accompanying memorandum, appellees argued they had requested multiple times, prior to appellant's current detention, that he be made available for a deposition; further, that counsel for appellant "previously stated in a filing submitted to this Court that [appellant] was '**available to cooperate with all scheduling and discovery matters**.' " (Emphasis sic.) (Jan. 9, 2023 Memo in Opp. at 5.) Appellees maintained there would be no need for appellant to request an indefinite stay if he was "available to participate in discovery." (Jan. 9, 2023 Memo in Opp. at 5.)

{¶ 9} On January 15, 2023, appellant filed a reply in support of his motion to stay pending resolution of his criminal case. In that reply, appellant argued he was attempting to obtain permission to appear for a deposition in Missouri.

{¶ 10} On March 13, 2023, the trial court filed an order and entry on appellees' motion to dismiss. In its order, the court noted appellant "filed his Complaint nearly a decade ago alleging claims of medical negligence against Dr. Leonard Janis and negligent credentialing against the medical facility," and "[t]his matter is the only matter which is still active against Dr. Janis." (Mar. 13, 2023 Order & Entry at 1.) The court further noted counsel for appellees "has attempted numerous times to arrange [appellant's] deposition in an effort to progress this case," and that appellees "assert * * * they attempted to coordinate with [appellant's] counsel in July 2021 to determine how this case should proceed after learning that [appellant] had active criminal warrants pending against him in Ohio, Missouri, and Illinois." (Mar. 13, 2023 Order & Entry at 1-2.) Further, "[c]ounsel for the parties again coordinated in March 2022 to discuss how this case should progress forward with the pending criminal charges," and counsel "again attempted to coordinate [in May 2022] how to progress this case in light of the pending criminal charges against [appellant]." (Mar. 13, 2023 Order & Entry at 2.)

{¶ 11} Citing appellees' representation that "they have requested the deposition of [appellant] but have not received dates for the deposition," the court entered the following order:

> IT IS HEREBY ORDERED THAT PLAINTIFF STEVEN LITTLER SHALL APPEAR FOR A DEPOSITION WITHIN 60 DAYS OF THE DATE OF THIS ORDER OR THIS MATTER SHALL BE DISMISSED FOR FAILURE TO PROSECUTE.

(Mar. 13, 2023 Order & Entry at 2.)

{¶ 12} On May 11, 2023, appellant filed a motion to stay the trial court's order to appear for deposition, arguing he was currently incapable of appearing for a deposition because he was incarcerated on federal criminal charges and being held in a Missouri county jail. Appellant further argued his unavailability to appear for a deposition "appears to stem from a bureaucratic logjam created by the fact he is incarcerated in a State of Missouri county jail as a result of federal criminal charges" but that "**[o]nce transferred to a federal prison, he may break the logjam**." (Emphasis sic.) (May 11, 2023 Mot. to Stay at 2.) Attached to the motion were various exhibits, including a thread of e-mail exchanges.

{¶ 13} On May 16, 2023, appellees filed a renewed motion to dismiss and memorandum in opposition to appellant's motion to stay. In the accompanying memorandum, appellees argued appellant has now "entered a guilty plea in his federal criminal case, admitting guilt on charges of conspiracy to distribute a controlled substance (fentanyl) and distribution of a controlled substance." (May 16, 2023 Renewed Mot. to Dismiss at 2.) Appellees asserted appellant's motion to stay "fails to acknowledge that there is no foreseeable date by which [appellant's] availability for a deposition can be confirmed." (May 16, 2023 Renewed Mot. to Dismiss at 2.)

{¶ 14} Appellees further argued that, after the trial court's order of March 13, 2023, appellant's counsel's office exchanged e-mails with the attorneys involved in the prosecution and defense of appellant's criminal case, including one e-mail in which a supervisory deputy "U.S. Marshall for the Eastern District of Missouri" had informed appellant's counsel's legal assistant that, in order to make appellant available to be deposed, "counsel would need 'the permission of the US Attorney and the District Judge over the

federal case.' " (May 16, 2023 Renewed Mot. to Dismiss at 4.)  Appellees argued there was no reliable estimate of when appellant would be available for deposition.

{¶ 15} By entry filed May 17, 2023, the trial court denied appellant's motion to stay and granted appellees' motion to dismiss for failure to prosecute.  In its entry, the court held in part that appellant "was put on notice via this Court's March 13, 2023 Order that he needed to appear for a deposition, or this case shall be dismissed." (May 17, 2023 Order & Entry at 4.)  The court further found "the ongoing delay here has been primarily due to [appellant's] refusal and/or inability to prosecute his own case," and that "additional delay in this matter will result in further prejudice to [appellees] who [have] been willing to participate in discovery over the past decade and progress this matter in an efficient manner." (May 17, 2023 Order & Entry at 4.)

## II. Assignment of Error

{¶ 16} Appellant appeals and assigns the following sole assignment of error for our review:

> The trial court erred by dismissing Plaintiff-Appellant's case for failure to appear for deposition while he was 1) incarcerated in Missouri; 2) was therefore unable to appear for deposition; and 3) where Defendant never filed a notice of Plaintiff's Deposition.

## III. Analysis

{¶ 17}  Under his single assignment of error, appellant asserts the trial court erred in granting appellees' motion to dismiss for failure to prosecute.  More specifically, appellant maintains the trial court erred in dismissing the action as he was unavailable to appear for a deposition due to his incarceration.

{¶ 18} Civ.R. 41(B)(1) governs involuntary dismissal by a court for failure to prosecute and states as follows: "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim."

{¶ 19} Appellate review of a trial court's dismissal for failure to prosecute pursuant to Civ.R. 41(B)(1) " 'involves two assessments: first, whether the plaintiff was provided with sufficient notice prior to the dismissal; and second, whether the dismissal constituted an abuse of discretion.' " *Speakman v. Crabtree*, 10th Dist. No. 13AP-879, 2014-Ohio-2152,

¶ 6, quoting *Geico Cas. Ins. Co. v. Durant-Baker*, 10th Dist. No. 13AP-573, 2014-Ohio-1530, ¶ 8. In general, "[t]he phrase 'abuse of discretion' implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Id.*, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). A reviewing court "must look at the totality of the circumstances" in determining "whether the trial court acted unreasonably, arbitrarily or unconscionably." *Strayer v. Szerlip*, 5th Dist. No. 01-CA-28, ¶ 31 (Mar. 26, 2002).

{¶ 20} Ohio courts recognize that "the ordinary abuse of discretion standard is heightened when a decision forever denies review of the merits of a claim." *Speakman* at ¶ 6, citing *Chalendar v. Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP-567, 2003-Ohio-39, ¶ 25. This court has previously observed: "The Supreme Court of Ohio has found that factors for a court to consider in a Civ.R. 41(B)(1) dismissal with prejudice include the drawn out history of the litigation, including a plaintiff's failure to respond to discovery until threatened with dismissal, and other evidence that a plaintiff is deliberately proceeding in dilatory fashion." *Reitano v. Wexner Med. Ctr.*, 10th Dist. No. 16AP-24, 2016-Ohio-4557, ¶ 28, citing *Jones v. Hartranft*, 78 Ohio St.3d 368, 372 (1997). In this respect, " ' "[d]espite the heightened scrutiny to which dismissals with prejudice are subject," the action of the trial court will be affirmed when "the conduct of a party is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order." ' " *Id.*, quoting *Whipps v. Ryan*, 10th Dist. No. 14AP-67, 2014-Ohio-5302, ¶ 28, quoting *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 48 (1997).

{¶ 21} The failure of a party to attend a hearing "at which the trial court had directed a party to appear may be considered by that court as a failure to prosecute, resulting in a Civ.R. 41(B)(1) involuntary dismissal," such authority being "based on the court's power to manage and administer its own docket and to ensure the orderly and expeditious disposition of cases." *N. Elec., Inc. v. Amsdell Constr., Inc.*, 8th Dist. No. 99775, 2013-Ohio-5433, ¶ 9, citing *Pembaur v. Leis*, 1 Ohio St.3d 89, 91 (1982). Thus, a court's "inherent power to control its docket includes the discretionary power to dismiss actions as a sanction for disregarding court orders or failing to prosecute." *Id.*, citing Civ.R. 41(B)(1); *Hartranft* at 371.

{¶ 22} On appeal, appellant does not assert the trial court failed to provide notice prior to dismissal. On this point, the trial court's entry of March 13, 2023 ordering appellant to appear for deposition, specifically put him on notice of the potential for a dismissal for failure to prosecute, and he therefore had the opportunity to respond (and did, in fact, file a motion to stay the court's order). Rather, appellant's contention is the trial court abused its discretion in dismissing a case "due to a party's failure to do the impossible." (Appellant's Brief at 7.) Appellant maintains he did not willfully disobey any court order and he frames the issue as whether the court erred in granting dismissal where he was prevented from complying with the court's deposition order due to his incarceration.

{¶ 23} Appellant's argument, however, fails to adequately characterize or address the scope of the trial court's decision. Specifically, in addition to citing the fact that appellant "was put on notice via this Court's March 13, 2023 Order that he needed to appear for a deposition," the court identified other factors for dismissal, including the lengthy procedural history of the case, appellant's personal responsibility for the "ongoing delay" in failing to prosecute his case, and a determination that additional delay in the matter would result in "further prejudice" to appellees. (May 17, 2023 Order & Entry at 4.)

{¶ 24} While appellant attributes the delay in discovery solely to his incarceration, the trial court's decision addressed not only that circumstance, but also the issue of delay prior to appellant's arrest, including the assertion by appellees that, beginning in 2021, they became aware of appellant's criminal warrants and that "during this time" counsel for appellant "made multiple attempts to contact [appellant] to try and progress this case." (May 17, 2023 Order & Entry at 2.) As set forth under the facts, in seeking dismissal under Civ.R. 41(B)(1), appellees represented to the trial court that they obtained information in July 2021 that appellant "was actively engaged in criminal activities and was under indictment for multiple felonies in the states of Illinois and Missouri." (Oct. 13, 2022 Reply Brief in Support of Mot to Dismiss at 1-2.) According to appellees, they had discussions with counsel for appellant on March 19, 2022 regarding "the stalled status of the case and the concerns with how to move forward due to [appellant's] criminal status." (Oct. 13, 2022 Reply Brief in Support of Mot. to Dismiss at 3.) Appellees further represented they contacted appellant's counsel on May 9, 2022 "to request information on how [appellant] was going to proceed," and that a further request for a case update and deposition date was

made on June 13, 2022. (Oct. 13, 2022 Reply Brief in Support of Mot. to Dismiss at 3.) Appellees argued that "[t]o date, there have been no dates provided for the deposition of [appellant]." (Oct. 13, 2022 Reply Brief in Support of Mot. to Dismiss at 3.)

{¶ 25} Regarding record evidence of appellant's conduct in the months prior to his incarceration (in October 2022), an exhibit attached to appellees' renewed motion to dismiss (i.e., a federal guilty plea agreement signed by appellant on May 10, 2023) reflects appellant was charged by federal prosecutors for "distribution of controlled substances on or about June 23, 2022." (Ex. B, Guilty Plea Agreement at 2.) According to the plea agreement, appellant had been selling fentanyl to a co-defendant "for several months prior to [the] death" of a female victim on the above date (June 23, 2022). (Ex. B, Guilty Plea Agreement at 5.) Appellant was subsequently arrested on "October 6, 2022." (May 16, 2023 Renewed Mot. to Dismiss at 3, citing "Docket, E.D. Mo. Case No. 4:22-cr-00395-CDP-NAB-2.)

{¶ 26} In a case relied on by appellees, *Norris v. Greater Cleveland Regional Transit Auth.*, 8th Dist. No. 111238, 2022-Ohio-3552, the trial court granted dismissal under Civ.R. 41(B)(1) after the plaintiff failed to appear for a scheduled deposition. Following the dismissal, the plaintiff unsuccessfully sought relief from judgment on grounds he was unable to attend the deposition due to his incarceration. On appeal, the reviewing court affirmed, finding significant the issue of plaintiff's "history of nonparticipation and dilatory conduct that preceded his incarceration." *Id.* at ¶ 22. Specifically, the court found the "procedural history of the case," including his failure to communicate with his own counsel, reflected the plaintiff "had not been an active participant in the case before his incarceration." *Id.* at ¶ 23. The court concluded it was plaintiff's "dilatory conduct throughout the history of the case," rather than his "failure to appear at the * * * deposition, that led to the dismissal of the case with prejudice." *Id.*

{¶ 27} In the present case, the record indicates appellant was under investigation for criminal activity occurring during a time period (i.e., a number of months prior to his incarceration) in which counsel for appellees repeatedly sought to schedule his deposition. While the record is less than clear with respect to appellant's communication, if any, with his counsel during this period, counsel for appellees represented to the trial court that, beginning in late 2021, "[i]t was then understood that counsel for [appellant] was

attempting, without success, to contact [appellant] to determine how * * * to proceed" and that, during discussions with appellant's counsel in March 2022, "counsel for [appellant] was still attempting to communicate with his client." (Oct. 10, 2022 Mot. to Dismiss at 3.) As outlined above, further requests for updates and/or deposition dates were made by appellees on May 9 and June 13, 2022, apparently to no avail.

{¶ 28} Here, the trial court could have properly considered, in addressing the motion to dismiss, whether appellant was an "active participant in the case before his incarceration," i.e., whether he acted in a dilatory manner in the months leading up to his incarceration, taking into account the lack of activity in the case during this time period and the lack of response to requests by appellees for deposition dates. *Norris* at ¶ 23. In such circumstances, the trial court is in " 'the best position to judge whether delays in the prosecution of a case are due to legitimate reasons when determining whether dismissal for lack of prosecution is warranted.' " *Id.*, quoting *Miller v. Plain Dealer Publishing Co.*, 8th Dist. No. 101335, 2015-Ohio-1016, ¶ 15, citing *Gelske v. 800 Constr. Co.*, 8th Dist. No. 80163, 2002-Ohio-3434, ¶ 13.

{¶ 29} Appellant raises an "unclean hands" argument, asserting that appellees' request for dismissal is undermined by their failure to file a formal notice of deposition prior to appellant's incarceration. We note the doctrine of unclean hands is based on the "maxim that one who seeks equity must do equity," and the doctrine "requires that the party invoking equity 'not be guilty of reprehensible conduct' regarding the subject matter of the suit." *State ex rel. DeWine v. Shadyside Party Ctr.*, 7th Dist. No. 13 BE 26, 2014-Ohio-2357, ¶ 29, citing *Basil v. Vincello*, 50 Ohio St.3d 185, 190 (1990). Further, under Ohio law, "[t]he doctrine of unclean hands is an affirmative defense," and therefore in general it must " 'be raised in the pleadings or in an amendment to the pleading, or it is waived.' " *Lakeview Loan Servicing, L.L.C. v. Hurd*, 7th Dist. No. 19 MA 0017, 2020-Ohio-3163, ¶ 36, quoting *Sharp v. Miller*, 7th Dist. No. 17 JE 0022, 2018-Ohio-4740, ¶ 37.

{¶ 30} Based on the record presented, we find unpersuasive any contention the trial court abused its discretion in failing to apply the doctrine of unclean hands. While appellees did not issue a formal notice of deposition, the record indicates they made repeated requests for deposition dates which, based on the lack of response, ultimately resulted in appellees' request for a court order. Given appellant's apparent lack of

cooperation and/or communication with his own counsel during the time period in which he was under criminal investigation, the record does not reasonably suggest that a formal notice of deposition would have secured appellant's appearance for a deposition.

{¶ 31} In addition to considering appellant's conduct in the months prior to his incarceration, the trial court also addressed the entire history of the case. Specifically, the trial court noted appellant "initiated this action in November 2013," and that "[s]ince that time," the case "has progressed slowly, if at all, over the past decade due in large part to [appellant's] failure to participate in discovery." (May 17, 2013 Entry & Order at 1.) The court concluded that "the ongoing delay here has been primarily due to [appellant's] refusal and/or inability to prosecute his own case." (May 17, 2023 Entry & Order at 4.) As noted, "the drawn-out history of the litigation" is a proper factor for consideration by a trial court in ruling on a motion to dismiss under Civ.R. 41(B)(1). *Hartranft* at 372. *See also Green v. Zep Inc.*, 10th Dist. No. 19AP-477, 2020-Ohio-3896, ¶ 34 (trial court did not abuse its discretion in granting Civ.R. 41(B)(1) motion to dismiss given "nearly ten-year history of delay" in case and appellant's "inability to comply with trial court orders regarding the case schedule").

{¶ 32} Finally, the trial court considered and found that "additional delay in this matter will result in further prejudice to [appellees]," noting that appellees have been "willing to participate in discovery over the past decade and progress this matter in an efficient manner." (May 17, 2023 Order & Entry at 4.) Whether a plaintiff's conduct has prejudiced the defendant is "[a] factor to be considered in determining whether a plaintiff's claim should be dismissed for failure to prosecute." *PHH Corp. v. Phillips*, 7th Dist. No. 13 MA 160, 2015-Ohio-2326, ¶ 10. In this respect, it has been held that "the greater the delay in prosecution, the greater the risk of prejudice to the defendant," as "[u]nnecessary delay increases the risk that witnesses' memories will fade and evidence will become stale." *Garofolo v. West Bay Care & Rehab. Ctr.*, 8th Dist. No. 109740, 2021-Ohio-1883, ¶ 22.

{¶ 33} As set forth above, after learning of outstanding warrants against appellant beginning in 2021, counsel for appellees made numerous inquiries of appellant's counsel about how to proceed with the case, including repeated requests for deposition dates prior to appellant's incarceration. During that pre-arrest period, the record reflects no activity on the part of appellant designed to move the case forward; rather, the docket activity was

confined to the court addressing the motion to dismiss (and renewed motion to dismiss), the corresponding reply briefs, and appellant's motions to stay pending resolution of the criminal case. To the extent appellant was unavailable (or inaccessible) to schedule and/or attend a deposition for a number of months prior to his arrest (i.e., during the time he was under investigation for criminal activity and had active warrants for his arrest), the trial court could have reasonably attributed such delay and inactivity to appellant's own dilatory conduct. *See Norris* at ¶ 22-23 (citing the plaintiff's "history of nonparticipation and dilatory conduct that preceded his incarceration" in finding he had "not been an active participant in the case" during that time period).

{¶ 34} Further, while appellant focuses on the obstacles he faced in complying with the trial court's order due to his incarceration, the case had already been pending for nearly nine years at the time of his arrest. As noted, the trial court addressed the fact the case was nearly a decade old, and concluded the ongoing delay was primarily the result of appellant's own "refusal and/or inability to prosecute his own case." Again, a trial court may properly take into account the entire procedural history of the action in deciding whether a dismissal is appropriate under Civ.R. 41(B)(1). As also noted, the trial court found that "additional delay" in a case that had been pending for almost a decade would "further prejudice" appellees. We find no error with that determination, especially where there was no clear indication from the record that appellant's availability (or authorization to permit his availability) for a deposition would be forthcoming at any date in the reasonably foreseeable future.

{¶ 35} Upon review and considering the totality of the circumstances of the case, we conclude the trial court did not abuse its discretion in dismissing the action for failure to prosecute. While appellant maintains he did not act in "bad faith," the trial court could have "reasonably concluded that his handling of the case was 'negligent, irresponsible, contumacious or dilatory.' " *Allison v. Evenflo Co.*, 2d Dist. No. 22613, 2009-Ohio-528, ¶ 10, quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 632 (1992).

{¶ 36} Based on the foregoing, appellant's sole assignment of error is not well-taken and is overruled.

## IV. Conclusion

{¶ 37}  Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

————————————